**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Chief Judge Marcia S. Krieger**

Civil Action No. 17-cv-01598-MSK-STV

**EXPEDITORS INTERNATIONAL OF WASHINGTON, INC.,**

     **Plaintiff,**

**v.**

**UNITED PARCEL SERVICE CO., and**
**UNITED PARCEL SERVICE, INC.,**

     **Defendants.**
_____

### OPINION AND ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT
_____

**THIS MATTER** comes before the Court pursuant to Third-Party Defendant Bronson

Trucking, Inc.'s ("Bronson") Motion for Summary Judgment **(# 34)** on the claims asserted by

Defendants United Parcel Service Co. and United Parcel Service (collectively, "UPS"), UPS'

response **(# 35)**, and Bronson's reply **(# 39)**; and the Plaintiff's ("Expeditors") Motion for

Summary Judgment **(# 36)**, UPS' response **(# 40)**, and Expeditor's reply **(# 42)**.

### FACTS

On March 3, 2016, Expeditors delivered a shipment of computer servers racks to UPS to

be flown from London to Denver. As discussed in more detail below, the cargo arrived

damaged. A second shipment on March 4, 2016, transported in the same manner, also arrived

damaged.

Based on these facts, Expeditors asserts **(# 1)** four claims against UPS: (i) a claim brought under the "Montreal Convention"[1] that UPS failed to properly transport the cargo; (ii) breach of contract, under an unspecified jurisdiction's common law, in that UPS breached the terms of an agreement it had with Expeditors to safely transport the cargo; (iii) negligence, under an unspecified jurisdiction's common law, in that UPS failed to use reasonable care when handling the cargo; and (iv) "breach of bailment," arising under an unspecified jurisdiction's common law.

In response, UPS filed a Third-Party Complaint **(# 18)**. UPS' Complaint appears to allege that Bronson is actually responsible for "some or all of" the damage to Expeditor's cargo. Thus, UPS asserts two[2] causes of action against Bronson: (i) for contribution, under an unspecified jurisdiction's common law, in that Bronson was "negligent or in breach of contract or in some other actionable manner legally responsible for" the damage to the cargo; and (ii) for declaratory judgment "of the respective rights and duties," apparently among Bronson and other unnamed third-party defendants.

The parties' summary judgment briefing clarifies, to some extent, the circumstances regarding the two shipments. As to the March 3 shipment, it is undisputed that UPS acknowledged that it received the cargo from Expeditors in London in good condition. UPS then flew the cargo to Denver. UPS arranged for Bronson to take possession of the cargo at a location known as the "hub" and transport it by truck to the recipient a few blocks away. Clint Turner, the Bronson driver handling the cargo, states in an affidavit that he observed that the cargo consisted of two packages on separate pallets. On one pallet, "the surrounding cardboard, also

---

[1]     Convention for the Unification of Certain Rules for International Carriage by Air, opened for signature at Montreal on May 28, 1999. S. Treaty Doc. No. 106–45 (2000).

[2]     UPS has abandoned a third claim, sounding in indemnification, that it initially pled.

known as the 'shroud,' was loose, torn, and had indentations." On the second pallet, the package "had puncture holes in the carton which was open on the bottom and some of the cargo was exposed." As a result, Mr. Turner wrote on the waybill "[outer] packaging crushed and damaged[,] may have hidden damage x2."

Steve Sinohui, UPS' representative at the scene, testified in his deposition that he also observed the damage to the packaging, but that neither he or Mr. Turner "could make a determination that there was damage to the [packages'] contents." Thus, Mr. Sinohui wrote, beneath Mr. Turner's notation on the waybill, "no visible damage to contents." Thereafter, Mr. Turner loaded the pallets onto his truck.

No party has come forward with any evidence regarding unusual circumstances that may have occurred during Mr. Turner's brief transportation of the pallets to the recipient. The recipient observed damages to the pallets' contents and complained to Expeditors.

As to the second shipment, it is undisputed that UPS did not note any damage to the shipment when it took delivery from Expeditors. Neither party has come forward with any evidence about any events that occurred during the cargo's transportation to the recipient. It appears to be undisputed that the recipient of the cargo noted upon delivery that the cargo had suffered substantial damage.

On March 30, 2016, a company called MTI Inspection Services conducted an examination of the cargo and its packaging at the recipient's location. MTI's report notes the following:

> This inspector observed a server cabinet . . . laying on its side.
> Cabinet was on pallet that was unrelated to the original shipment.
> A small single corrugated liner had been partially placed between
> the cabinet and the pallet. Pallet had one upper slat that had split
> clean into two pieces, width-wise. Portion of cabinet rested on
> broken slat.

> Original solid top skid [ ] was available for inspection, constructed of new heat pressed wood panels, on weight bearing foam type footers. Footers were sturdy and firm.
>
> Item had been upright, bolted to skid. This inspector viewed evidence of sheared bolts, as well as remnants of threading still fixed into position. Metal ramps, utilized to facilitate movement of cabinet from skid were available, loosely positioned onto skid.
>
> . . . According to consignee, packaging did not accompany commodity at time of delivery. Two identical cabinets with installed hard disk drives were also presented for inspection. They were positioned onto skids, identical to item inspected.

Both Bronson and Expeditors have filed summary judgment motions directed at claims made by or against UPS. Bronson's motion **(# 34)** seeks summary judgment in its favor on all of UPS' claims against it, arguing that: (i) as to the contribution claim, UPS cannot establish that it tendered the cargo to Bronson in good condition based on the notations made on the waybill at the time of transfer; (ii) the Montreal Convention creates a presumption that damage occurring during transport took place during carriage by air; and (iii) UPS' claim for a declaratory judgment need not be addressed because it is duplicative of the contribution claim, given that Bronson is the only defendant. Expeditor's motion **(# 36)** seeks summary judgment in Expeditors' favor on its claim under the Montreal Convention, arguing that UPS cannot dispute that the cargo was tendered to it in good condition and delivered by it in a damaged condition.

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs

what facts are material and what issues must be determined.  It also specifies the elements that

must be proved for a given claim or defense, sets the standard of proof and identifies the party

with the burden of proof.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986);

*Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of

and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter

for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment

motion, a court views all evidence in the light most favorable to the non-moving party, thereby

favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.

2002).

If the movant has the burden of proof on a claim or defense, the movant must establish

every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P.

56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the

responding party must present sufficient, competent, contradictory evidence to establish a

genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th

Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine

dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material

fact, no trial is required.  The court then applies the law to the undisputed facts and enters

judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence

of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.

If the respondent comes forward with sufficient competent evidence to establish a *prima facie*

claim or defense, a trial is required.  If the respondent fails to produce sufficient competent

evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. Branson's motion

UPS' only substantive claim against Bronson sounds in contribution. Under Colorado law, a party claiming contribution must show that: (i) it and other persons were jointly or severally liable for the same injury to a third party; and (ii) the party claiming contribution has paid more than its pro rata share of the common liability. C.R.S. § 13-50.5-102(1). Thus, to avoid summary judgment, UPS must come forward with evidence that demonstrates a genuine dispute as to whether Bronson was liable for some or all of the damage to the cargo.

UPS has not done so. UPS' theory of the case is that: (i) although there was visible exterior damage to the cargo before UPS delivered it to Bronson, the contents were nevertheless intact when the cargo was delivered to Bronson, and (ii) the damage to the cargo's contents occurred during Bronson's transit of the contents thereafter. But UPS has not adduced a scrap of evidence to establish either of those two key facts. As to whether the cargo's contents had been damaged before delivery to Bronson, even Mr. Sinohui, UPS' own representative, acknowledged that neither he nor Mr. Turner were able to examine the contents and reach a conclusion about their status. And UPS offers no evidence to dispute Mr. Turner's affidavit that the transport of the cargo from the hub to the recipient occurred without incident. Simply put, all that UPS has offered to implicate Bronson here is a theory, but not evidence. Consequently, UPS has failed to demonstrate a triable dispute with regard to its contribution claim against Bronson. Bronson is entitled to summary judgment on all of UPS' claims

.

### C. Expeditor's motion

Expeditors seeks summary judgment against UPS on its claims under the Montreal Convention. Article 18 of the Montreal Convention, which governs "Damage to Cargo," applies here. Subsection 1 of Article 18 provides that "the [air] carrier is liable for damage sustained in the event of . . . damage to cargo upon condition that the event which caused the damage so sustained took place during carriage by air." However, subsection 2 of Article 18 provides that "the [air] carrier is not liable if and to the extent it proves that the . . . damage to the cargo resulted from . . . defective packaging of that cargo performed by a person other than the carrier."[3] Although there is little authority interpreting the Montreal Convention, the elements of a claim under Article 18 can be readily derived from its text. The party asserting the claim, here Expeditors, bears the burden of proving that: (i) the cargo was damaged, and (ii) the damage occurred during the cargo's transportation by international air carriage. If Expeditors carries that burden, UPS bears the burden of proving that the damage was the result of inadequate packing performed by someone other than UPS.

As to the March 3 shipment, it is undisputed that UPS transported the cargo by international air carriage, and that the cargo was damaged, at least superficially, during that

---

[3]    The parties argue about the applicability of subsection 4 of Article 18, which provides that "the period of carriage by air does not extend to any carriage by land . . . If, however, such carriage [by land] takes place in the performance of a contract for carriage by air, for the purpose of loading, delivery or transhipment, any damage is presumed, subject to proof to the contrary, to have been the result of an event which took place during carriage by air." Because the Court has already concluded that UPS has not come forward with any evidence to demonstrate that the March 3 shipment was damaged during Bronson's carriage of it by land, the Court need not consider subsection 4 and the presumptions it reflects. And because the parties have come forward with no evidence whatsoever about the carriage of the March 4 shipment in any way beyond UPS' involvement, it is not clear that there was any "carriage by land" under subsection 4 at all.

carriage.  UPS argues that the cargo's <u>contents</u> were damaged not during UPS' carriage of it by

air, but rather during Bronson's carriage of that cargo by land.  For the reasons set forth above,

UPS has failed to demonstrate the existence of any genuine dispute of fact on that point.  In the

absence of any other argument by UPS as to the insufficiency of Expeditors' claim, Expeditors

has demonstrated that the cargo was damaged during air transport and UPS has not come

forward with evidence to dispute that.  Expeditors is therefore entitled to summary judgment on

its Montreal Convention claim relating to the March 3 shipment.

As to the March 4 shipment, Expeditors has come forward with undisputed evidence that

the cargo was undamaged when tendered to UPS for international air carriage.  Neither party has

set forth the how the cargo moved in transit thereafter, but it is undisputed that the cargo was

damaged when received by the recipient.  UPS' response brief concedes that "[d]amage to the

cargo occurred during transit," and there is no indication that the transit consisted of anything

more than UPS' air carriage.  Thus, Expeditors has come forward with evidence to support its

*prima facie* burden of showing that the cargo was damaged in international air carriage.

UPS' contention is that the cargo was damaged as a result of defective packaging by

Expeditors or the party consigning the cargo for shipping.  As reflected in subsection 2 of Article

18, UPS bears the burden of proving that the shipment was inadequately packed.  The sole

evidence that the parties have submitted regarding the packaging of the cargo is the MTI report

quoted above.[4]  UPS seizes upon the report's reference to the server cabinet lying on a pallet

with a "broken slat" as proof that the cargo was inadequately packed.  But the MTI report makes

_____

[4]     Both sides have submitted collateral evidence, including various waybills and
declarations from various witnesses.  But because no witness purports to have personally
inspected the shipment at any time, the MTI report is the sole evidence of the damage and thus
the only evidence the Court considers.

clear that the broken pallet was "unrelated to the original shipment" – that is, the broken pallet is not the pallet that the cargo was on when transported by UPS. Indeed, the report goes on to identify the "original solid top skid" that was involved, and notes no defects in it.[5] (Emphasis added.) The report also mentions "sheared bolts," which could be either a packaging defect or evidence of mishandling of the cargo during transit. But without additional evidence elaborating on why and how the bolts sheared – evidence that is not in the record -- the finder of fact would have to speculate as to whether the sheared bolts were a packing or handling defect. Because UPS bears the burden of proof at this stage, the absence of sufficient evidence in the record works to UPS' detriment. Once again, UPS has not come forward with evidence that would demonstrate a genuine dispute of fact warranting trial. Thus, Expeditors is entitled to summary judgment on its Montreal Convention claim relating to the March 4 shipment as well.

Expeditors has alleged, without challenge from UPS, that it was forced to pay damages to the recipient in the maximum amount of its contractual liability -- $250,000 per shipment. Accordingly, the Court grants Expeditors' motion for summary judgment and enters judgment in favor of Expeditors and against UPS in the amount of $500,000.

### CONCLUSION

For the foregoing reasons, Bronson's Motion for Summary Judgment (# 34) is

**GRANTED**, and the Clerk of the Court shall enter judgment in favor of Bronson and against

---

[5] This also addresses UPS' citation to a Damage Inspection Report prepared by the recipient in June 2016, several months after the shipment at issue. That report also refers to the server cabinet being "returned on incorrect pallet" and that the "pallet broken from excessive weight." But the MTI report, resulting from an inspection in March 2016, already concluded that the server cabinet had been removed from its "original solid top skid" and placed on a broken pallet "unrelated to the original shipment." Thus, the recipient's observation in June 2016 that the cabinet was lying on a broken pallet does not support UPS' contention that the original packing was defective.

UPS on all claims in UPS' Third-Party Complaint. Expeditors' Motion for Summary Judgment **(# 36)** is also **GRANTED**, and the Clerk of the Court shall enter judgment in favor of Expeditors and against UPS, jointly and severally, in the amount of $500,000. Because entry of that judgment would appear to resolve all of Expeditors' claimed injuries, there is no need for the Court to entertain Expeditors' claims in the alternative. Thus, upon entry of the judgments set forth above, the Clerk of the Court shall close this case.

Dated this 27th day of February, 2019.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge